[Cite as *In re L.A.*, 2023-Ohio-1877.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: L.A.

C.A. No.　　30572

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.　　DN 21 05 0355

DECISION AND JOURNAL ENTRY

Dated: June 7, 2023

CARR, Presiding Judge.

{¶1}　Appellant, T.A. ("Father"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated his parental rights and placed his minor child in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.

I.

{¶2}　Father is the biological father of L.A., born January 8, 2009. The child's mother ("Mother") did not participate during most of the trial court proceedings, and she did not appeal from the permanent custody judgment. Father has other children who are not parties to this appeal.

{¶3}　CSB had a prior dependency case with this family during 2014 and 2015, but the facts of that case are not set forth in the record. During 2020, CSB began working with the family again, on a voluntary basis, because Mother had serious mental health and substance abuse issues

and Father was incarcerated. After approximately one year, Mother stopped complying with the terms of the voluntary safety plan, so CSB filed this involuntary case on May 11, 2021.

{¶4} L.A. was removed from Mother's custody and placed in the emergency temporary custody of CSB. The child was later adjudicated a dependent child and was placed in the temporary custody of CSB. The facts are not disputed that Mother did little to attempt to be reunified with L.A.

{¶5} Father has an extensive criminal history during L.A.'s lifetime, including several felony drug convictions during 2013. When this case was filed, Father was serving a period of post-release control after a multi-year sentence on more recent felony convictions for burglary, safecracking, and unlawful transactions in weapons. Shortly afterward, Father violated the conditions of his post-release control by committing domestic violence against Mother. He was incarcerated for approximately five months for that violation.

{¶6} When Father was released from incarceration, he did not maintain contact with the caseworker. He would sometimes schedule appointments and not show up and did not keep the caseworker apprised of his changing contact information. Father refused to submit to oral drug swabs when asked, and he admitted that he continued to use illegal drugs daily. Father did not obtain stable housing or comply with any of the other requirements of the case plan.

{¶7} On April 19, 2022, CSB moved for permanent custody of L.A. Four months later, Father was reincarcerated for violating the conditions of his post-release control again. He was released from that period of incarceration shortly before the permanent custody hearing. Following a hearing on the permanent custody motion, the trial court terminated parental rights and placed L.A. in the permanent custody of CSB. Father appeals and raises two assignments of error.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED WHEN IT GRANTED PERMANENT CUSTODY TO [CSB] WHERE THE DECISION TO GRANT PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WHERE [CSB] FAILED TO DEMONSTRATE REASONABLE CASE PLANNING AND DILIGENT EFFORTS AND PROVE THAT PERMANENT CUSTODY WAS IN THE BEST INTEREST OF THE CHILD BY CLEAR AND [CONVINCING] EVIDENCE.

{¶8} Father's first assignment of error is that the trial court's permanent custody decision is against the manifest weight of the evidence. Most of Father's argument under this assignment of error is that CSB did not make reasonable reunification and case planning efforts to reunite him with L.A. during the periods of time that he was not incarcerated. Father did not raise any argument about a lack of reasonable reunification efforts at the permanent custody hearing, however, and has failed to demonstrate that CSB was required to prove that it made reasonable efforts at that stage of the proceedings.

{¶9} R.C. 2151.419(A) specifically required CSB to establish reasonable efforts toward reunification or to prevent the continued removal of L.A. from the home:

at any hearing held pursuant to section 2151.28 [shelter care], division (E) of section 2151.31 [ex parte emergency temporary custody], or section 2151.314 [shelter care placement], 2151.33 [pre-adjudication temporary placement], or 2151.353 [disposition following adjudication] of the Revised Code at which the court removes a child from the child's home or continues the removal of a child from the child's home[.]

R.C. 2151.419(A). *See also In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, ¶ 43. Father does not argue that the trial court failed to make the requisite findings at those prior hearings or that the findings were not proper.

{¶10} Father's primary argument is that CSB failed to tailor its case planning efforts to him. Father did not raise this issue at the permanent custody hearing or at any other point during

the trial court proceedings. To begin with, Father was represented by counsel throughout these proceedings. If he believed that the services offered by the existing case plans were not sufficient, his trial counsel could have filed proposed case plan amendments but did not. *See* R.C. 2151.412(F)(2) ("Any party may propose a change to a substantive part of the case plan[.]").

{¶11} Father also failed to object to the amended case plans filed by CSB. Consequently, because he raised no timely objection to the amended case plans, they became binding on the parties 15 days after being filed "by operation of law[.]" *In re D.T.*, 9th Dist. Summit No. 29876, 2021-Ohio-1650, ¶ 38; R.C. 2151.412(F)(2)(b).

{¶12} Moreover, the record demonstrates that Father's failure to reunify with L.A. was the result of his own inaction, not any shortcomings by CSB. Father did not maintain contact with the caseworker or the guardian ad litem and made no effort to comply with the reunification requirements of the court-ordered case plans in this case.

{¶13} This Court will focus its review of this assignment of error on the argument properly before us: whether the trial court's permanent custody judgment was against the manifest weight of the evidence. Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child of the same parent has been adjudicated abused, neglected, or dependent three times; or that the child cannot be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D)(1). R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 98-99 (1996). Clear and convincing evidence is that

which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." (Internal quotations omitted.) *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶14} In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id*. at ¶ 21.

{¶15} The trial court found that the first prong of the permanent custody test was satisfied in this case under R.C. 2151.414(B)(1)(a) and R.C. 2151.414(E)(1). Those provisions together provide that the child "cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents[]" if the trial court finds, by clear and convincing evidence, that "[f]ollowing the placement of the child outside the child's home * * *, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home." Father does not dispute that he failed to remedy the conditions that caused L.A. to be placed outside the home, and the record fully supports the trial court's finding. Father failed to engage in treatment to address his long-standing problems with domestic violence and illegal drug use, failed to obtain stable housing and income, and continued to violate the conditions of his post-release control on his most recent felony convictions.

{¶16} Father does challenge the trial court's finding that permanent custody was in the best interest of L.A. This Court's best interest review focuses on the best interest factors set forth in R.C. 2151.414(D). In making its best interest determination, the trial court was required to consider the statutory best interest factors, which include: the interaction and interrelationships of the child, the wishes of the child, the custodial history of the child, the child's need for permanence and whether that can be achieved without a grant of permanent custody, and whether any of the factors outlined in R.C. 2151.414(E)(7)-(11) apply.[1] R.C. 2151.414(D)(1)(a)-(e); *see In re R.G.*, 9th Dist. Summit Nos. 24834 and 24850, 2009-Ohio-6284, ¶ 11.

{¶17} Father's interaction with L.A. during this case was limited to supervised visits when he was not incarcerated. When Father was first released from incarceration during this case, he visited L.A. fairly consistently. L.A., who was 13 years old at that time, did not interact much with Father, and told others that she was frightened by his anger and did not want to see him. L.A. eventually chose to stop attending visits with Father.

{¶18} L.A.'s wishes were expressed through the guardian ad litem. L.A. wanted to stay with her current foster family and did not want to live with or have contact with Father. L.A. has significant mental health and behavioral problems and expressed ongoing anger toward Father and Mother for her family's situation and the failure of both parents to work toward reunification of the family. L.A.'s behavior had improved while living in her current foster home and after the foster parents enrolled her in an alternative school program.

{¶19} L.A.'s custodial history before this case began is not detailed in the record. Notably, it is unclear whether she ever lived in Father's custody. It is apparent from the record, however, that Father had been incarcerated off and on throughout L.A.'s life, serving a total of

---

[1] The trial court did not find that any of those provisions applied to the facts of this case.

approximately half the child's 13-year life incarcerated on various felony convictions and post-release control violations.

{¶20} By the time of the hearing, L.A. had spent nearly two years during this case living in temporary placements and needed a stable permanent home. Neither parent was prepared to provide her with a safe and secure home and CSB had been unable to find a suitable relative who was willing to do so. The trial court reasonably concluded that a legally secure permanent placement would be achieved by placing L.A. in the permanent custody of CSB.

{¶21} Given the evidence presented at the permanent custody hearing, Father has failed to demonstrate that the trial court lost its way in concluding that permanent custody was in the best interest of L.A. *See Eastly* at ¶ 20. Father's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT[] ERRED WHEN IT PROCEEDED WITH A PERMANENT CUSTODY TRIAL WHEN THE GUARDIAN AD LITEM FAILED TO FILE HIS REPORT NOT LESS THAN SEVEN DAYS PRIOR TO THE PERMANENT CUSTODY TRIAL, IN VIOLATION OF RULE 48.06(C)(1) OF THE OHIO SUPREME COURT RULES OF SUPERINTENDENCE.

{¶22} Father's second assignment of error is that the trial court erred in admitting the report of the guardian ad litem because the guardian ad litem failed to file the report at least seven days before the hearing, as required by Sup.R. 48.06(B)(1). The obvious purpose of requiring the filing of the report at least seven days before the hearing is to provide the parties with a reasonable opportunity to review the report before the hearing. *See In re M.R.*, 7th Dist. Harrison No. 22 HA 0003, 2022-Ohio-2209, ¶ 31.

{¶23} In the trial court, however, Father did not object to the admission of the guardian ad litem report, nor did he request a continuance of the hearing so that his counsel had time to review the contents of the report. By failing to timely raise this argument in the trial court, Father

8

has forfeited all but plain error on appeal. *See In re T.B.*, 9th Dist. Summit No. 27334, 2014-Ohio-4040, ¶ 12.

**{¶24}** Father has failed to argue or demonstrate that the trial court committed plain error by admitting the guardian ad litem report. Father's only argument is that the report was not timely filed. He fails to point to anything specific in the report that caught him off guard or prejudiced his defense. Consequently, his second assignment of error is overruled.

III.

**{¶35}** Father's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

STEVENSON, J.
FLAGG LANZINGER, J.
CONCUR.

APPEARANCES:

ADAM M. VANHO, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

DANIEL BACHE, Guardian ad Litem.