[Cite as *In re H.P.*, 2023-Ohio-3700.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: H.P.

C.A. No.    30685

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    DN 20 10 0680

DECISION AND JOURNAL ENTRY

Dated: October 11, 2023

STEVENSON, Judge.

{¶1}    Appellant, A.S. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that placed her minor child in the permanent custody of Summit County Children Services Board ("CSB").  This Court affirms.

I.

{¶2}    Mother is the biological mother of H.P., born October 7, 2020.  The child's father ("Father") did not appeal the trial court's judgment.  Shortly after H.P.'s birth, CSB filed a complaint, alleging that the child was abused and dependent because of the parents' long-term abuse of illegal drugs, which included ongoing abuse of methamphetamine and fentanyl both before and after the child's birth.

{¶3}    After a contested hearing, the trial court adjudicated H.P. as a dependent child and later placed her in the temporary custody of CSB.  Mother and Father appealed that judgment,

challenging only the adjudication of the child, and this Court affirmed that judgment. *In re H.P.*, 9th Dist. Summit Nos. 29973 and 29975, 2022-Ohio-778, ¶ 1.

{¶4} CSB initially placed H.P. with a foster mother, K.K., until the agency was able to locate and approve a relative for placement. During November 2020, CSB placed H.P. in the home of a maternal cousin ("Cousin"). Less than three months later, Cousin requested that CSB remove H.P. from her home. Cousin, who has her own three children and was helping to care for her terminally ill father, reported that she was overwhelmed by the additional responsibility of caring for an infant who had medical problems. H.P. was then receiving ongoing treatment and therapy for a medical problem that has since been resolved through treatment and therapy.

{¶5} Cousin further explained to the caseworker that, at the time she agreed to care for H.P., she did not realize that it would be a long-term commitment. After removing H.P. from Cousin's home, CSB again placed H.P. in the foster home of K.K., where she remained throughout this case. Shortly after H.P. was removed from her home, Cousin reached out to K.K. once to inquire about the wellbeing of the child and to return some of her belongings. Afterward, Cousin stopped communicating with K.K. or CSB about H.P. Cousin apparently believed that H.P. would be reunited with her parents.

{¶6} Throughout the following year, the parents remained together as a couple but did not comply with the substance abuse, domestic violence, or other requirements of the case plan. They also failed to maintain consistent contact with CSB, the trial court, the guardian ad litem, or young H.P. CSB eventually moved for permanent custody of the child.

{¶7} Several months after CSB moved for permanent custody, Cousin contacted the caseworker to inquire about H.P. At that time, she was unsure about whether she was willing to have the child returned to her home. The caseworker informed Cousin that, because CSB had not

assessed Cousin's home as a potential placement for more than one year, H.P. could not be returned to her home unless CSB reassessed and approved Cousin's home. *See* Ohio Adm.Code 5101:2-42-18(L) (a home assessment must be completed annually to "assure that the placement continues to meet the requirements of this rule for approval of the placement."). Cousin eventually called the caseworker to express her interest in legal custody of H.P., but not until almost seven months after CSB had filed its motion for permanent custody.

{¶8} Nevertheless, Mother and Father filed a motion to place H.P. in the legal custody of Cousin. At the final dispositional hearing, the trial court considered CSB's motion for permanent custody as well as the parents' alternative motion for legal custody to Cousin. Following the hearing, the trial court terminated parental rights and placed H.P. in the permanent custody of CSB. Mother appeals and raises one assignment of error.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED BY DENYING THE PARENTS' MOTIONS TO PLACE THEIR CHILD IN THE [LEGAL] CUSTODY OF A SUITABLE RELATIVE.

{¶9} Mother's sole assignment of error is that the trial court erred in denying her motion to place H.P. in the legal custody of Cousin. In her argument, Mother relies primarily on case law pertaining to appeals from a legal custody judgment. *See*, *e.g*., *In re R.S.*, 9th Dist. Summit Nos. 30498 and 30499, 2023-Ohio-2224, ¶ 28-31; *In re W.W.*, 9th Dist. Summit No. 30404, 2023-Ohio-2149, ¶ 15-18. Aside from citing law about fundamental parental rights, Mother does not support her argument with legal authority pertaining to an appeal from a permanent custody judgment, which is the judgment on appeal in this case. In an appeal from a legal custody judgment, this Court reviews the evidence under a lesser burden of proof (preponderance instead of clear and

convincing evidence), focuses only on the best interest of the child, and looks to statutory factors beyond those set forth in R.C. 2151.414.[1] *See id.*

{¶10} For example, one of Mother's primary arguments is that the trial court erred by failing to honor the parents' wishes, a best interest factor set forth in R.C. 3109.04(F)(1)(a), which this Court may consider when reviewing an appeal from a legal custody judgment, but not an appeal from a permanent custody judgment. *See In re R.S.*, 2023-Ohio-2224, at ¶ 31; *In re L.A.*, 9th Dist. Summit No. 30572, 2023-Ohio-1877, ¶ 16; R.C. 2151.414(D)(1). In fact, R.C. 2151.414(C) provides that, in making its permanent custody decision, the trial court "shall not consider the effect the granting of permanent custody to the agency would have upon any parent of the child."

{¶11} In the case, this Court necessarily focuses its review on the permanent custody judgment that Mother has appealed. The denial of the parents' motion for legal custody to Cousin is considered only insofar as it was an alternative dispositional motion before the court. This Court has repeatedly emphasized "that if permanent custody is in the best interest of the child, legal custody to a relative necessarily is not." *In re M.S.*, 9th Dist. Summit Nos. 30506 and 30515, 2023-Ohio-1558, ¶ 26.

{¶12} Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child of the same parent has been adjudicated abused, neglected, or dependent three times; or that

---

[1] This reasoning assumes that the legal custody appeal does not also involve a challenge to the denial of a permanent custody motion.

the child cannot be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D)(1). R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 98-99 (1996). Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." (Internal quotations omitted.) *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶13} In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id*. at ¶ 21.

{¶14} The trial court found that the first prong of the permanent custody test was satisfied in this case because H.P. had been in the temporary custody of CSB for at least 12 months of a consecutive 22-month period. R.C. 2151.414(B)(1)(d). Mother does not challenge that finding on appeal. Moreover, she does not dispute the overwhelming evidence at the hearing, including her own testimony, that she and Father were not prepared to provide H.P. with a suitable home. CSB presented substantial evidence that the parents failed to comply with the reunification requirements of the case plan and did not demonstrate sobriety or that they otherwise had achieved stability in their lives.

{¶15} Consequently, this Court will review the trial court's decision that permanent custody was in the best interest of the children. This Court's best interest review focuses on the best interest factors set forth in R.C. 2151.414(D). In making its best interest determination, the trial court was required to consider the statutory best interest factors, which include: the interaction and interrelationships of the child, the wishes of the child, the custodial history of the child, the child's need for permanence and whether that can be achieved without a grant of permanent custody, and whether any of the factors outlined in R.C. 2151.414(E)(7)-(11) apply.[2] R.C. 2151.414(D)(1)(a)-(e); *see In re R.G.*, 9th Dist. Summit Nos. 24834 and 24850, 2009-Ohio-6284, ¶ 11.

{¶16} Mother has not developed an argument under the best interest factors that the trial court was required to consider under R.C. 2151.414(D). In the interest of justice, because Mother's fundamental parental rights are at stake, this Court will review those factors. The first best interest factor is the interaction and interrelationship of the child with her parents, relatives, caregivers, and significant other people in her life. R.C. 2151.414(D)(1)(a). H.P.'s interaction with her parents was limited to supervised visits, and the parents did not regularly visit their newborn child during the first two years of her life.

{¶17} Cousin had even less interaction with H.P. Although she had the child placed in her home for nearly three months when she was a newborn infant, Cousin had not seen H.P. since she was three months old, which had been more than two years ago by the time of the hearing. Moreover, Cousin had not reached out to the caseworker or the foster mother to inquire about the child's wellbeing throughout that period, nor had she asked to visit the child to reestablish a

---

[2] The trial court did not find that any of those provisions applied to the facts of this case.

relationship with her. Because of their lack of contact throughout most of the child's life, Cousin was a stranger to H.P. and there was no familial bond between them.

{¶18} On the other hand, H.P.'s relationship with her foster mother, K.K., was close and well-established. H.P. lived with K.K. for most of her life and K.K. was the only parent figure in the child's life. K.K. had been meeting all H.P.'s needs and the child was flourishing in her home. K.K. was interested in adopting H.P. if the trial court granted CSB's permanent custody motion.

{¶19} H.P. was too young to express her wishes so the guardian ad litem spoke on her behalf. The guardian ad litem opined that permanent custody was in the child's best interest because Cousin had not developed a relationship with her, and K.K. had been providing her with a stable and loving home and was willing to continue doing so.

{¶20} By the time of the hearing, H.P. was two and a half years old and had spent her entire life moving between temporary placements. She needed a legally secure permanent home. The trial court reasonably concluded that permanent custody would provide such a placement because CSB had been unable to find an alternative long-term placement for the child. Although Mother argues that Cousin was willing and able to provide H.P. with a permanent home, Cousin did not express her interest in legal custody until several months after CSB moved for permanent custody of the child. By then, Cousin no longer had any relationship with then two-year-old H.P. The child was closely bonded with K.K. and her family, and the trial court did not want to remove her from the only stable home she had ever known.

{¶21} Mother has failed to demonstrate that the trial court lost its way by concluding that permanent custody to CSB, rather than legal custody to Cousin, was in the best interest of H.P. *See Eastley* at ¶ 20. Mother's assignment of error is overruled**.**

## III.

**{¶22}** Mother's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

SCOT STEVENSON
FOR THE COURT

CARR, P. J.
FLAGG LANZINGER, J.
CONCUR.

APPEARANCES:

LESLIE S. GRASKE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

THOMAS C. LOEPP, Attorney at Law, for Appellee.