[Cite as *In re I.B.*, 2024-Ohio-2249.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: I.B.
     V.L.

C.A. Nos.    30712
                 30716

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    DN 21 09 0778
                 DN 21 09 0788

DECISION AND JOURNAL ENTRY

Dated: June 12, 2024

---

SUTTON, Judge.

**{¶1}** Appellant, A.M. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that placed her minor children in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.

I.

**{¶2}** Mother is the biological mother of I.B., born July 14, 2018; and V.L., born February 23, 2020. The children's fathers did not appeal from the trial court's judgment.

**{¶3}** During May 2021, Stark County Job and Family Services ("SCJFS") received a referral because a non-relative friend, C.S., had taken one of the children for medical treatment at a hospital but lacked authority to have the child treated. For over a month, Mother had left one child in the care of C.S., and the other with a maternal relative. Mother had not maintained contact with them and had not provided the caregivers with any legal authority over the children. SCJFS

conducted a search for Mother but did not know where to locate her and was unable to reach her via telephone.

{¶4} On May 17, 2021, SCJFS filed complaints to allege that I.B. and V.L. were neglected and/or dependent children. The Stark County Juvenile Court later adjudicated the children dependent, placed them in the temporary custody of SCJFS, and adopted the case plan as an order of the court. The case plan required Mother to obtain substance abuse and mental health assessments and follow any treatment recommendations, and to obtain and maintain stable housing and income and demonstrate that she could provide for the basic needs of her children.

{¶5} The children's cases were later transferred to Summit County, where Mother resided. Shortly after the Summit County Juvenile Court accepted the transfer, it moved the children from the temporary custody of SCJFS to the temporary custody of CSB. Throughout this case, the children were placed together in the home of Mother's friend, C.S.

{¶6} Mother obtained mental health assessments and was diagnosed with major depressive disorder, generalized anxiety disorder, and symptoms of post-traumatic stress disorder. The case plan required Mother to engage in ongoing counseling and psychiatric medication management, but Mother attended only two counseling sessions and did not follow through with taking prescribed medication to help manage her emotions. Mother was uncooperative with the caseworker, the guardian ad litem, and C.S., and she continued to exhibit volatile behavior toward them.

{¶7} The trial court extended temporary custody once to allow Mother more time to work on her case plan and/or to allow the agency more time to locate a relative to take custody of the children. Over the next several months, however, Mother did not make progress on the mental health component of the case plan and did not locate a stable home for her children. She continued

to live with people who had not been approved by CSB in the unclean and overcrowded home of the maternal grandmother ("Grandmother"), who had lost custody of Mother in a juvenile case several years ago.

{¶8} CSB was also unable to find a suitable relative who was willing to provide the children with a permanent home. CSB had pursued placement of the children in the legal custody of C.S., but the relationship between Mother and C.S. significantly deteriorated during this case. Ultimately, C.S. informed CSB that she was no longer willing to take legal custody of the children, which would have preserved Mother's residual parental rights, because Mother had become increasingly hostile and threatening toward her.

{¶9} On December 8, 2022, CSB moved for permanent custody of both children. Following a hearing before a visiting trial judge, the trial court terminated parental rights and placed I.B. and V.L. in the permanent custody of CSB. Mother appeals and raises one assignment of error.

II.

**ASSIGNMENT OF ERROR**

> THE TRIAL COURT ERRED WHEN IT GRANTED PERMANENT CUSTODY TO [CSB] WHERE THE DECISION TO GRANT PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WHERE [CSB] FAILED TO DEMONSTRATE REASONABLE CASE PLANNING AND DILIGENT EFFORTS AND PROVE THAT PERMANENT CUSTODY WAS IN THE BEST INTEREST OF THE CHILD BY CLEAR AND CONVINCING EVIDENCE.

{¶10} Mother's sole assignment of error is that the trial court's permanent custody decision was not supported by the evidence. We note that portions of Mother's argument rely on legal authority that does not pertain to this permanent custody appeal. For example, she cites R.C. 2151.414(E)(1), a first-prong ground for permanent custody that was not a basis of the judgment

on appeal. She also relies on *In re Burrell*, 58 Ohio St.2d 37, 39 (1979), and a similar line of cases, which pertain solely to the evidence required for an adjudication of dependency. Because the children's prior adjudication of dependency had already become final and was not relitigated at the permanent custody stage of the proceedings, we will not review that case law in this appeal.

{¶11} Mother further asserts that CSB failed to make reasonable efforts to reunify her with her children because, although this case was pending for nearly two years, she was not provided with sufficient assistance to locate independent housing. There is nothing in the record to suggest that Mother ever asked CSB for housing assistance; nor did she challenge the trial court's prior findings that CSB had made reasonable efforts to prevent the continued removal of the children from her custody and/or to return them to her custody. Moreover, "[i]f [she] believed that the services offered by the existing case plans were not sufficient, [her] trial counsel could have filed proposed case plan amendments but did not." *In re L.A.*, 9th Dist. Summit No. 30572, 2023-Ohio-1877, ¶ 10, citing R.C. 2151.412(F)(2). Mother does not argue plain error on appeal.

{¶12} Therefore, this Court will review the trial court's permanent custody decision to determine whether it was against the manifest weight of the evidence. Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child of the same parent has been adjudicated abused, neglected, or dependent three times; or that the child cannot be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D)(1). R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio

St.3d 95, 98-99 (1996). Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." (Internal quotations omitted.) *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶13} In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id*. at ¶ 21.

{¶14} The trial court found that the first prong of the permanent custody test was satisfied because I.B. and V.L. had been in the temporary custody of children services agencies for a total of more than 12 months of a consecutive 22-month period. *See* R.C. 2151.414(B)(1)(d). The record reflects that, at the time CSB moved for permanent custody, both children had been in the temporary custody of SCJFS or CSB for over 16 months of a consecutive 22-month period. Mother does not dispute that finding.

{¶15} Next, the trial court found that permanent custody was in the best interest of the children. Although Mother asserts that permanent custody was not in the children's best interest, she does not propose an alternative disposition that she believes was in their best interest. In the trial court, Mother essentially conceded that she was not prepared to provide the children with a suitable home, as she did not request a return of custody and did not testify on her own behalf. By the time of the hearing, the case had been pending for almost two years and the trial court lacked

authority to extend temporary custody any longer. *See* R.C. 2151.353(G). Through her trial counsel, Mother asked the trial court to place the children in the legal custody of Grandmother, but she does not raise that argument on appeal.

{¶16} This Court will focus its review on whether the trial court's decision that permanent custody was in the best interest of the children was against the manifest weight of the evidence. When reviewing the trial court's best interest determination, this Court focuses primarily on the specific factors set forth in R.C. 2151.414(D). *In re M.S.*, 9th Dist. Summit Nos. 30506 and 30515, 2023-Ohio-1558, ¶ 25. In making its best interest determination, the trial court was required to consider the statutory best interest factors, which include: the interaction and interrelationships of the children, their wishes, the custodial history of the children, their need for permanence and whether that can be achieved without a grant of permanent custody, and whether any of the factors outlined in R.C. 2151.414(E)(7)-(11) apply. R.C. 2151.414(D)(1)(a)-(e); *see In re R.G.*, 9th Dist. Summit Nos. 24834 and 24850, 2009-Ohio-6284, ¶ 11. None of the R.C. 2151.414(E)(7)-(11) factors apply in this case.

{¶17} The first best interest factor is the interaction and interrelationship of the children with their parents, relatives, caregivers, and significant other people in their lives. R.C. 2151.414(D)(1)(a). Mother was scheduled to have weekly visits with the children at the visitation center. CSB once attempted to hold a visit between Mother and the children in the community, but Mother did not attend the visit. CSB had also encouraged Mother to attend the children's medical appointments, as they were in the process of obtaining diagnoses and treatment for their apparent developmental delays and V.L. had also been diagnosed with asthma. Mother did not attend any of the children's medical appointments, even though C.S. had offered to drive her to and from the appointments.

{¶18} When Mother visited the children at the visitation center, she often brought Grandmother with her. Rather than engaging in one-on-one time with the young children, Mother and Grandmother typically handed them their cell phones and allowed them to play with them for approximately 30 minutes of each weekly, two-hour visit. Because of Mother's limited interaction with the children and from what they had observed during the visits, witnesses opined that Mother and the children were not closely bonded. There was also testimony that the children sometimes expressed reluctance about visiting with Mother.

{¶19} Moreover, Mother's visits were always supervised or monitored by CSB personnel because of concerns about her untreated mental health problems. Mother had not engaged in ongoing counseling or any medication management during this case. The caseworker, C.S., and the guardian ad litem all testified that Mother was typically hostile and aggressive toward them during this case. They each observed times when, for no apparent reason, Mother became angry and began yelling at them. C.S., who had been Mother's friend before this case began, had attempted to work with Mother to involve her in the children's medical appointments and to see them more often, but Mother refused to cooperate with her. By the time of the hearing, Mother's behavior toward C.S. had become so threatening and volatile that C.S. refused to communicate directly with Mother anymore.

{¶20} The children, on the other hand, had achieved stability while living in the same home throughout this case. Their needs were being met and they had developed a close bond with each other and with their caregiver, C.S. The children were comfortable in her home, where they had spent more than half of their young lives. The caseworker commended C.S. for being proactive in addressing the medical and developmental needs of both children. C.S. had expressed a willingness to adopt both children if CSB received permanent custody.

**{¶21}** The children were both under the age of five at the time of the hearing, so the guardian ad litem spoke on their behalf. She opined that permanent custody was in their best interest because Mother had not worked on the reunification goals of the case plan, had difficulty getting along with everyone involved in the case because of untreated mental health problems, and had made little effort to develop a bond with her young children.

**{¶22}** I.B. and V.L. had been in the temporary custody of SCJFS and CSB for most of their young lives and needed legally secure permanent placements. At the time of the hearing, Mother did not dispute that she was not prepared to provide her children with a safe and stable permanent home. Although she was employed, she had failed to obtain suitable housing and had not complied with the mental health component of the case plan. CSB had found no suitable relatives who were willing and able to provide the children with a safe and stable home. Mother had proposed that Grandmother receive legal custody of the children, but the trial court rejected Grandmother as a potential custodian because she had her own lengthy history with CSB, and lacked a suitable home because it was not clean and she had numerous people living there, including Mother, who had not been approved by CSB.

**{¶23}** The trial court reasonably concluded that a legally secure permanent placement would be achieved by placing I.B. and V.L. in the permanent custody of CSB. The trial court did not lose its way by concluding that it was in the best interest of these children to terminate Mother's parental rights. *See Eastley* at ¶ 20. Mother's assignment of error is overruled.

III.

**{¶24}** Mother's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETTY SUTTON
FOR THE COURT

STEVENSON, P.J.
CARR, J.
CONCUR.

APPEARANCES:

ADAM M. VANHO, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and MARRETT WILLIS HANNA, Assistant Prosecuting Attorney, for Appellee.

OLIVIA PENCE, Guardian ad Litem.