[Cite as *In re J.P.*, 2025-Ohio-2214.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: J.P.

C.A. No.     31337

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DN 23 08 0742

DECISION AND JOURNAL ENTRY

Dated: June 25, 2025

SUTTON, Judge.

{¶1}   Appellant, N.P. ("Mother") appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights and placed her minor child in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.

I.

{¶2}   Mother is the biological mother of J.P., born August 25, 2023. The child's father is deceased.

{¶3}   Mother has a long history of methamphetamine use, criminal convictions, and untreated mental health diagnoses. Mother has been diagnosed with schizophrenia and/or schizoaffective disorder, which includes ongoing symptoms of psychosis and requires psychiatric medication. She also requires ongoing counseling for her additional diagnoses of anti-social personality disorder; post-traumatic stress disorder ("PTSD"); and stimulant, cocaine, and alcohol

use disorders. Mother has been in and out of counseling and psychiatric medication management for several years.

{¶4} Mother has an older child, M.A., who is not a party to this appeal but was the subject of a prior juvenile case. The juvenile court removed M.A. from Mother's custody shortly after birth based on concerns about Mother's methamphetamine use while pregnant, her untreated mental health diagnoses, and ongoing criminal activity. Because Mother did not resolve her parenting problems in that case, M.A. was ultimately placed in the legal custody of his maternal grandmother.

{¶5} J.P. was born one year later while Mother was incarcerated at the Ohio Reformatory for Women in Marysville, Ohio, on numerous felony convictions including harassment with a bodily substance, assault, grand theft of a motor vehicle, breaking and entering, and aggravated possession of drugs. At the time CSB filed the complaint three days after J.P.'s birth, Mother was not scheduled to be released from prison for more than eight months and she was not permitted to have the baby reside with her in prison. Mother had made no arrangements for an alternative caregiver for the child and CSB had been unable to contact the maternal grandmother about placement of the child with her or another relative. When CSB eventually did reach the grandmother, she was unable to take custody of J.P.

{¶6} J.P. was adjudicated dependent and placed in the temporary custody of CSB. The trial court also adopted the case plan as an order of the court. The case plan required Mother to engage in mental health and substance abuse treatment while in prison, to the extent she was able. After her release from incarceration, Mother was required to engage in regular mental health and substance abuse treatment, including regular drug testing; complete parenting classes; regularly

visit J.P. to develop a relationship with him; and demonstrate that she could meet the child's basic needs.

**{¶7}** Mother was released from incarceration on May 4, 2024. She obtained a substance abuse assessment but did not engage in any drug treatment or parenting classes, and engaged in mental health treatment only briefly. Mother met twice with a psychiatrist at Community Support Services, who prescribed several psychiatric medications for Mother. Mother did not continue to meet with the psychiatrist, however, nor did she regularly fill her prescriptions for the psychiatric medications.

**{¶8}** The caseworker met with Mother twice during June 2024, and obtained oral swabs for drug testing. In violation of the case plan in this case and the conditions of her post-release control in her criminal case, Mother's first sample tested positive for methamphetamine and amphetamine and the second sample tested positive for methamphetamine, amphetamine, and cocaine. Mother did not submit any more samples for drug testing. As the case plan in this case explicitly stated, CSB would presume that all missed drug screens were positive for illegal drugs. Mother also admitted to the caseworker that she smoked methamphetamine daily after her May 4 release.

**{¶9}** Although Mother was permitted to have weekly, supervised visits with J.P., she visited the child only three times between May 4 and July 17, 2024. On July 25, 2024, CSB moved for permanent custody of J.P. The final hearing was held on December 18, 2024. By that time, Mother was again incarcerated for violating the conditions of her post-release control and on two additional felony charges of escape because she allegedly cut off her GPS monitoring device and walked away from a post-release facility.

{¶10} Following the hearing, the trial court terminated Mother's parental rights and placed J.P. in the permanent custody of CSB. Mother appeals and raises one assignment of error.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED WHEN IT GRANTED PERMANENT CUSTODY TO [CSB] WHERE THE DECISION TO GRANT PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WHERE [CSB] FAILED TO DEMONSTRATE REASONABLE CASE PLANNING AND DILIGENT EFFORTS AND PROVE THAT PERMANENT CUSTODY WAS IN THE BEST INTEREST OF THE CHILD BY CLEAR AND CONVINCING EVIDENCE.

{¶11} Mother's sole assignment of error is that the trial court's permanent custody judgment is not supported by the evidence presented at the hearing. Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child of the same parent has been adjudicated abused, neglected, or dependent three times; or that the child cannot be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D)(1). R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 98-99 (1996).

{¶12} In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment]

must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.) *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id*. at ¶ 21.

{¶13} The trial court found that the first prong of the permanent custody test was satisfied under R.C. 2151.414(B)(1)(a) because Mother had "failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home[.]" R.C. 2151.414(E)(1). The "conditions" that caused J.P. to remain placed outside Mother's home were those set forth in the adjudicatory decision. *In re G.D*., 2014-Ohio-3476, ¶ 16 (9th Dist.). Those conditions included Mother's drug use, her untreated mental health diagnoses, her history of criminal activity, and her inability to otherwise meet the child's needs in a safe a stable home. Relying on *In re Burrell*, 58 Ohio St.2d 37, 39 (1979), Mother asserts that CSB failed to prove that her substance abuse or mental illnesses had a negative impact on J.P., but that determination was already made when the child was adjudicated dependent and need not be relitigated at the permanent custody stage of the proceedings. *In re I.B*., 2024-Ohio-2249, ¶ 10 (9th Dist.).

{¶14} Although Mother asserts that the trial court erred by finding that CSB had made reasonable efforts after she was released from prison, any error in that finding would be harmless, unless it was essential to the permanent custody judgment. *In re L.F*., 2025-Ohio-1643, ¶ 18 (9th Dist.). Mother has failed to demonstrate that the trial court was required to make a finding of reasonable reunification efforts at the permanent custody stage of the proceedings. *See In re L.A*., 2023-Ohio-1877, ¶ 8 (9th Dist); *In re C.F*., 2007-Ohio-1104, ¶ 43.

{¶15} Moreover, Mother does not dispute that she failed to remedy the conditions that had caused the ongoing removal of J.P. from her custody. CSB offered Mother reunification services as soon as she was released from prison, but Mother did not make a serious attempt to

work toward reunification with her child. Mother did not engage in regular mental health treatment, drug treatment, or parenting classes; admittedly continued to use methamphetamine daily in violation of the case plan and the conditions of her post-release control; and committed two additional felonies, which led to her incarceration for an unknown period of time.

{¶16} Next, the trial court was required to find that permanent custody was in the best interest of J.P. When reviewing the trial court's best interest determination, this Court focuses primarily on the specific factors set forth in R.C. 2151.414(D). *In re M.S.*, 2023-Ohio-1558, ¶ 25 (9th Dist.). The trial court was required to consider the statutory best interest factors, which include: the interaction and interrelationships of the child, his wishes, custodial history, need for permanence and whether that can be achieved without a grant of permanent custody, and whether any of the factors outlined in R.C. 2151.414(E)(7)-(11) apply. R.C. 2151.414(D)(1)(a)-(e); *see In re R.G.*, 2009-Ohio-6284, ¶ 11 (9th Dist.). None of the factors set forth in R.C. 2151.414(E)(7) through (11) are relevant in this case.

{¶17} Mother's interaction with J.P. throughout the child's young life was extremely limited. Mother was incarcerated for most of this case, but she failed to take full advantage of her opportunities to see the child when she was not incarcerated. After Mother was released on May 4, 2024, she had the opportunity to have weekly, supervised visits with J.P. Mother attended the weekly visits with J.P. only twice, however. She then requested that her visits be reduced to once a month, stating that she did not need to see J.P. more often. Mother even told her probation officer that she did not want to be reunified with J.P.

{¶18} After the visits were reduced to once a month, Mother visited J.P. only once. Witnesses who observed some of Mother's few visits did not believe that Mother and J.P. had

developed a parent-child bond. Mother was incarcerated two months later and did not see J.P. again.

{¶19} Because J.P. was too young to express his own wishes at the time of the hearing, the guardian ad litem spoke on his behalf. He opined that permanent custody was in the child's best interest. He emphasized that Mother had made almost no effort to be reunified with her child and that J.P. was thriving in the foster home, the only home he had ever known.

{¶20} J.P. had spent his entire life outside Mother's custody and needed a legally secure permanent placement. Mother was unable to provide the child with a safe and secure permanent home and CSB had been unable to find any appropriate relatives who were willing and able to do so. The trial court reasonably concluded that permanent custody would provide J.P. with a legally secure permanent home so he could be placed for adoption.

{¶21} Mother has failed to demonstrate that the trial court lost its way by concluding that CSB had satisfied both prongs of the permanent custody test. Mother's assignment of error is overruled.

III.

{¶22} Mother's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

 

BETTY SUTTON
FOR THE COURT

FLAGG LANZINGER, P. J.
CARR, J.
CONCUR.

APPEARANCES:

ADAM M. VANHO, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.