[Cite as *In re B.C.*, 2025-Ohio-5201.]

STATE OF OHIO      )              IN THE COURT OF APPEALS
                     )ss:        NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT    )

IN RE: B.C.                    C.A. Nos.    31456
      K.C.                             31457
                                      31477
                                      31478

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    DN 23-12-001049
                   DN 23-12-001050

DECISION AND JOURNAL ENTRY

Dated: November 19, 2025

SUTTON, Judge.

**{¶1}** Appellants, S.S. ("Mother") and B.C. ("Father"), appeal from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated their parental rights and placed their two minor children in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.

I.

**{¶2}** Mother and Father are the biological parents of B.C., born October 15, 2011; and K.C., born May 17, 2009. The children were removed from the custody of their parents by Akron Police pursuant to Juv.R. 6 after Father violated an ongoing protection order by coming to Mother's home, threatening her, and holding her hostage in the presence of the children. The police officers were familiar with the home, as they had responded to domestic violence incidents

there before. When the police arrived, Mother and the children denied that Father was there, but the police officers eventually located him hiding in the attic and arrested him. During the encounter with the officers, Mother was combative, behaved erratically, and refused to cooperate with them, so they arrested her for obstructing official business.

{¶3} During December 2023, CSB filed complaints to allege that B.C. and K.C. were dependent children because of ongoing domestic violence perpetrated by Father against Mother; the recent incarceration of both parents; Father's extensive criminal history including outstanding warrants on charges of felony theft and methamphetamine possession; and Mother's erratic behavior, extreme loss of weight, and suspected untreated mental illness or drug problems. The next day, Mother tested positive for methamphetamine, amphetamine, and THC, so CSB filed an amended complaint to add specific allegations about Mother's methamphetamine use. Both parents waived their rights to adjudicatory and dispositional hearings, stipulated to the facts alleged in the complaints and that CSB had made reasonable efforts to prevent the removal of the children from their home, and agreed that the children would be placed in the temporary custody of CSB. They also agreed that the trial court would adopt the case plan as an order of the court.

{¶4} The court-ordered case plan required Mother and Father to engage in domestic violence counseling, obtain mental health and substance abuse assessments and follow all treatment recommendations, refrain from using all mind-altering substances, and demonstrate sustained sobriety. Without objection, CSB later amended the case plan to add the requirement that the parents obtain and maintain stable income and housing so they could meet the basic needs of the children. Throughout this case, neither parent substantially complied with the case plan requirements.

{¶5} Father was later convicted of theft and aggravated possession of drugs. Although he was ultimately placed on community control, he was incarcerated in jail and then a community-based correctional facility, where he received drug treatment. After he was released from the correctional facility, he entered an aftercare program at Oriana House but was later discharged for unsuccessful completion. His probation officer referred him to other aftercare programs, but he did not complete any of them or submit to drug testing as required. When Father submitted to drug screening, he consistently tested positive for methamphetamine.

{¶6} Mother obtained a mental health and substance abuse assessment at Catholic Charities but did not disclose her history of using any drugs other than marijuana. She also did not follow up with recommended counseling at that agency, because she insisted that she did not need it. Mother later engaged in inconsistent counseling at Community Health Center ("CHC"). Her recommended treatment plan included participating in weekly counseling and abstaining from using all mind-altering drugs, including marijuana. Mother did not attend counseling or submit drug tests to CHC as required. Of the four samples she submitted to CHC, three tested positive for fentanyl or marijuana.

{¶7} Mother submitted oral drug swabs to CSB, many of which also tested positive for methamphetamine. Nevertheless, Mother continued to insist that she was not using drugs. Mother eventually stopped engaging in all services at CHC and was unsuccessfully discharged. Mother did not reengage in any services at CHC or any other agency.

{¶8} On November 25, 2024, CSB moved for permanent custody of B.C. and K.C. Mother and Father alternatively requested a first six-month extension of temporary custody. Following a dispositional hearing, the trial court terminated parental rights and placed B.C. and

K.C. in the permanent custody of CSB. Mother and Father appeal and each raise three assignments of error. This Court will consolidate some of their assignments of error to facilitate review.

II.

### MOTHER'S ASSIGNMENT OF ERROR I

THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED PLAIN AND REVERSIBLE ERROR WHEN IT GRANTED PERMANENT CUSTODY TO SUMMIT COUNTY CHILDREN SERVICES AS THE TRIAL COURT'S DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE.

### MOTHER'S ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND ABUSED [ITS] DISCRETION WHEN IT DENIED MOTHER'S MOTION FOR A FIRST SIX-MONTH EXTENSION.

### FATHER'S ASSIGNMENT OF ERROR I

INSUFFICIENT EVIDENCE SUPPORTS THE TRIAL COURT'S AWARD OF PERMANENT CUSTODY AND THE CONCOMITANT TERMINATION OF [FATHER'S] PARENTAL RIGHTS.

### FATHER'S ASSIGNMENT OF ERROR II

THE TRIAL COURT'S AWARD OF PERMANENT CUSTODY AND THE CONCOMITANT TERMINATION OF [FATHER'S] PARENTAL RIGHTS IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]

{¶9} Through their first and second assignments of error, the parents challenge the evidence supporting the trial court's decision to place the children in the permanent custody of CSB. Mother asserts that the decision was against the manifest weight of the evidence, while Father challenges both the sufficiency and weight of the evidence supporting the permanent custody decision.

{¶10} Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary

custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child of the same parent has been adjudicated abused, neglected, or dependent three times; or that the child cannot be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D)(1). R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 98-99 (1996).

{¶11} This Court's review under the sufficiency of the evidence standard requires us to "examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *In re Z.C.*, 2023-Ohio-4703, ¶ 12, quoting *Cross v. Ledford*, 161 Ohio St. 469, 477 (1954). Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross*, 161 Ohio St. 469, at paragraph three of the syllabus.

{¶12} In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.) *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id*. at ¶ 21.

{¶13} On the first prong of the permanent custody test, the trial court found that the children could not be returned to the custody of either parent within a reasonable time or should not be returned to their custody because both parents had "failed continuously and repeatedly to

substantially remedy the conditions causing the child[ren] to be placed outside [their] home." R.C. 2151.414(E)(1). R.C. 2151.414(B)(1)(a). Mother does not challenge the trial court's first prong finding but Father does. Father argues that sole "conditions" to be considered under R.C. 2151.414(E)(1) are those that caused the initial removal of the children from the parents' custody, as set forth in CSB's original complaint.

{¶14} This Court explicitly rejected that argument in *In re J.H.*, 2009-Ohio-2223, ¶ 9 (9th Dist.), emphasizing that "the language of R.C. 2151.414(E)(1) is not limited to home conditions that were identified by the agency at the time of the initial removal of the children." Instead, this Court has construed the operative language of R.C. 2151.414(E)(1) "to encompass not only the conditions that led to the initial removal of the children from the home, but also problems with the home environment that the agency identified after the children's removal, which caused the juvenile court to continue its placement of the children outside the home." *Id.*, citing *In re A.C.*, 2007-Ohio-5525, ¶ 17-22 (9th Dist.). In this case, CSB amended its original complaint after Mother tested positive for methamphetamine. Moreover, the "conditions" to be remedied by the parents under R.C. 2151.414(E)(1) are also identified in the court-ordered case plan. *See In re J.H.*, 2009-Ohio-2223, at ¶ 10 (9th Dist.).

{¶15} Among other things, the case plan required both parents to engage in mental health and substance abuse treatment and achieve a sober lifestyle. The evidence is not disputed that neither parent consistently engaged in treatment, did not submit to regular drug screening, and most of the samples they submitted tested positive for methamphetamine, fentanyl, buprenorphine, and/or marijuana. Mother tested positive for methamphetamine as recently as the week before the final hearing. Moreover, despite their many positive drug test results throughout this case, both parents insisted to the caseworker, the guardian ad litem, and others that they did not use any

drugs during this case and did not need drug treatment. At the final hearing, each parent again insisted that they had not used drugs during this case. They offered no explanation for the many positive drug test results, from several different agencies, except that the test results were wrong.

{¶16} The parents also failed to obtain and maintain stable income and housing. By the time of the hearing, Father was again in jail and facing the potential of ongoing incarceration. He was awaiting a hearing on violating the conditions of his community control by testing positive for drugs. He was also recently arrested on new felony charges of breaking and entering and was awaiting trial.

{¶17} Mother was living in the house that had been owned by Father's recently deceased mother. The house would ultimately pass to Father, and Mother testified that she and Father planned to live together in that home. CSB had not assessed that home and was concerned that there was an ongoing court order that prohibited Father from having contact with Mother because of repeated incidents of domestic violence. Mother had not undergone the required counseling to address her history as a victim of domestic violence. At the hearing, she testified that she was to blame for the violence, admitted that Father had assaulted her multiple times, but that she did not believe that Father would be violent with her in the future.

{¶18} Therefore, despite Father's argument to the contrary, a review of the record reveals that the trial court had substantial evidence before it to support its conclusion that Mother and Father had failed to substantially remedy the conditions that caused the initial and ongoing removal of B.C. and K.C. from the parents' home. *See* R.C. 2151.414(E)(1).

{¶19} Next, the trial court found that permanent custody was in the best interest of B.C. and K.C. Mother asserts through her second assignment of error that it was in the best interest of the children for the trial court to have granted the parents' alternative request for a six-month

extension of temporary custody. In addition to considering the best interest of the children, the trial court had statutory authority to grant a first six-month extension of temporary custody only if clear and convincing evidence also demonstrated that "there has been significant progress on the case plan" and there was "reasonable cause to believe that the child[ren] will be reunified with one of the parents or otherwise permanently placed within the period of extension." R.C. 2151.415(D)(1).

{¶20} As explained above, neither parent had made significant or even minimal progress on the case plan. Moreover, by failing to explicitly challenge the trial court's finding under R.C. 2151.414(E)(1), Mother acquiesced in "the trial court's implicit finding that [she] failed to make significant progress on the reunification goals of the case plan." *In re A.S.*, 2019-Ohio-2414, ¶ 12 (9th Dist.). Consequently, the requirements for granting an extension of temporary custody under R.C. 2151.415(D)(1) were not satisfied in this case.

{¶21} This Court now reviews whether the evidence supported the trial court's determination that permanent custody was in the best interest of the children. When reviewing the trial court's best interest determination, this Court focuses primarily on the specific factors set forth in R.C. 2151.414(D). *In re M.S.*, 2023-Ohio-1558, ¶ 25 (9th Dist.). The trial court was required to consider the statutory best interest factors, which include: the interaction and interrelationships of the children, their wishes, their custodial history, their need for permanence and whether that can be achieved without a grant of permanent custody, and whether any of the factors outlined in R.C. 2151.414(E)(7)-(11) apply. R.C. 2151.414(D)(1)(a)-(e); *see also In re R.G.*, 2009-Ohio-6284, ¶ 11 (9th Dist.). None of the factors set forth in R.C. 2151.414(E)(7) through (11) are relevant in this case.

{¶22} The evidence demonstrated that there was a strong bond between the parents and the children and that each parent visited the children regularly, when they could. Mother's interaction with the children was limited to supervised visits at the agency visitation center because she did not consistently engage in case plan services and never demonstrated a period of sobriety. Father was incarcerated for most of this case. During the six months that he was able to visit the children, his visits were also supervised because of his ongoing drug use.

{¶23} The wishes of the children were expressed by the guardian ad litem. Both children wanted to be reunited with their parents. The guardian ad litem opined that returning the children to their parents was not in their best interest because neither parent had made any progress toward resolving their parenting problems. She expressed disappointment that Mother had seemed motivated to work on the case plan at the beginning of the case but did not consistently engage in any reunification services. The guardian ad litem was particularly concerned that both parents "adamantly denied" that they used drugs, despite their multiple positive drug test results throughout this case.

{¶24} These children did not understand why they had been removed from their home, as they apparently had been surrounded by domestic violence and substance abuse in their home for many years. In fact, at the beginning of this case, both children followed Mother's instructions to falsely deny that Father was hiding in the home when the police responded to another incident of domestic violence. The children needed ongoing counseling and a safe and stable home environment. CSB had been unable to find any suitable relatives who were willing to take placement of the children and both parents were unable to do so. The trial court reasonably concluded that a legally secure permanent placement would be achieved by placing the children in the permanent custody of CSB.

{¶25} Having reviewed all the evidence before the trial court, this Court must conclude that clear and convincing evidence supported the trial court's findings on each prong of the permanent custody test. In weighing the evidence, this Court cannot conclude that the trial court lost its way or created a manifest miscarriage of justice by terminating parental rights and placing B.C. and K.C. in the permanent custody of CSB. *See Eastley* at ¶ 20. The parents' first and second assignments of error are overruled.

### MOTHER'S ASSIGNMENT OF ERROR III

THE TRIAL COURT COMMITTED PLAIN AND REVERSIBLE ERROR WHEN IT GRANTED PERMANENT CUSTODY TO SUMMIT COUNTY CHILDREN SERVICES AND PLACED THE CHILDREN IN THE PERMANENT CUSTODY OF SUMMIT COUNTY CHILDREN SERVICES WITH A FINDING THAT SUMMIT COUNTY CHILDREN SERVICES PROVIDED REASONABLE REUNIFICATION EFFORTS PURSUANT TO R.C. 2151.419.

{¶26} Mother's third assignment of error is that the trial court erred by granting permanent custody to CSB because it improperly found that CSB made reasonable efforts to reunify her with her children. "Any error in that finding would be harmless, however, unless it was essential to the permanent custody judgment." *In re E.R.*, 2025-Ohio-4546, ¶ 20 (9th Dist.). Mother has failed to demonstrate that the trial court was required to make a finding of reasonable reunification efforts at the permanent custody stage of the proceedings. *See In re L.A.*, 2023-Ohio-1877, ¶ 8 (9th Dist).

{¶27} R.C. 2151.419(A) specifically required CSB to establish, and the trial court to find, that the agency made reasonable efforts toward reunification or to prevent the continued removal of the children from the home:

at any hearing held pursuant to section 2151.28 [shelter care], division (E) of section 2151.31 [ex parte emergency temporary custody], or section 2151.314 [shelter care placement], 2151.33 [pre-adjudication temporary placement], or 2151.353 [disposition following adjudication] of the Revised Code at which the court removes a child from the child's home or continues the removal of a child from the child's home[.]

R.C. 2151.419(A)(1). CSB was not required to demonstrate that it made reasonable reunification efforts at the permanent custody hearing unless it had not done so at one of the prior hearings identified in R.C. 2151.419(A)(1). *In re C.F.*, 2007-Ohio-1104, ¶ 43.

{¶28} Beginning with the first shelter care hearing, the magistrate found that CSB had made reasonable efforts to prevent the removal of the children at numerous hearings throughout this case. Mother does not argue that those findings were not proper, nor did she object to or move to set aside any of those findings in the trial court. Mother has not argued plain error or demonstrated any prejudicial error in the trial court's reasonable efforts findings. Consequently, her third assignment of error is overruled.

### FATHER'S ASSIGNMENT OF ERROR III

THE TRIAL COURT'S FINDING OF INTENSIVE EFFORTS TO LOCATE KINSHIP RESOURCES IS UNSUPPORTED BY THE RECORD.

{¶29} Father's final assignment of error is that the trial court erred in finding that CSB had undergone intensive efforts to identify and locate a suitable kinship caregiver for the children, as required by R.C. 2151.4116(A). Father did not raise this issue in the trial court and does not argue plain error on appeal.

{¶30} Moreover, Father recognizes that this Court has rejected this same argument in a prior permanent custody appeal, reasoning that challenges to the trial court's compliance with the requirements of R.C. 2151.4116(A) must be raised prior to the permanent custody stage of the proceedings. *In re A.S.*, 2025-Ohio-2621, ¶ 34 (9th Dist.). The statute requires the agency to "make intensive efforts to identify and engage an appropriate and willing kinship caregiver for the care of a child who is in . . . [the] [t]emporary custody of the agency[.]" *Id.*, quoting R.C. 2151.4116(A).

{¶31} By its terms, R.C. 2151.4116(A) applied only while the children were placed in the temporary custody of CSB and "does not apply to the final disposition of the children or the merits of the agency's motion for permanent custody, which is the issue before us on appeal." *In re A.S.* at ¶ 34 (9th Dist.). After the children entered the permanent custody of CSB, the question of whether they should have previously resided in foster care or in a kinship placement became moot. *Id.*, citing *In re J.K.-S.*, 2024-Ohio-2053, ¶ 34 (6th Dist.), quoting *In re M.K.*, 2023-Ohio-3786, ¶ 42 (5th Dist.). *See also In re A.M.*, 2024-Ohio-1164, ¶ 62 (8th Dist.). Although Father asks this Court to reconsider its holding on this issue in *In re A.S.*, he has failed to point to any flaw in this Court's legal interpretation R.C. 2151.4116(A). Because Father has failed to develop an argument to persuade us to reconsider our prior holding on this issue, his third assignment of error is overruled.

III.

{¶32} The parents' assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period

for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
BETTY SUTTON
FOR THE COURT


STEVENSON, P. J.
CARR, J.
CONCUR.


APPEARANCES:

ANDREW KARAS, Attorney at Law, for Appellant.

JASON D. WALLACE, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and C. RICHLEY RALEY, JR., Assistant Prosecuting Attorney, for Appellee.

NEIL P. AGARWAL, Attorney at Law, for the Children.

LAURIE M. BOVEINGTON, Guardian ad Litem.