[Cite as *In re B.D.*, 2026-Ohio-306.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

IN RE: B.D.
      S.D.

C.A. Nos.     25AP0043
                 25AP0044

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF WAYNE, OHIO
CASE Nos.   2024 JUV-C 000150
             2024 JUV-C 000151

DECISION AND JOURNAL ENTRY

Dated: February 2, 2026

SUTTON, Judge.

{¶1}    Appellant, D.D. ("Father"), appeals from a judgment of the Wayne County Court of Common Pleas, Juvenile Division, that terminated his parental rights to his minor children and placed them in the permanent custody of Wayne County Children Services Board ("CSB"). This Court affirms.

I.

{¶2}    Father is the legal father of B.D., born April 2, 2010; and S.D., born October 7, 2011. Although Father is divorced from the children's mother ("Mother"), his paternity was established because they were married at the time each child was born. Mother did not engage in case plan services in this case and ultimately agreed that the children should be placed in the agency's permanent custody. She did not appeal the trial court's judgment.

{¶3} During November 2023, CSB received a referral about suspected physical and/or sexual abuse of the children by Father. At that time, the children were living with Father, and Mother had not seen them for several years. Father refused to meet with or cooperate with CSB, so the agency filed complaints on December 15, 2023. The juvenile court removed the children from Father's home and placed them in the emergency temporary custody of CSB. Because those prior cases did not proceed to adjudication and disposition in a timely manner, CSB dismissed its complaints on March 11, 2024.

{¶4} The same day, CSB filed complaints to commence this case while the children remained in its emergency temporary custody. The complaints alleged that both children were abused, neglected, and dependent because of physical abuse and possible sexual abuse by Father and the poor conditions of the home. The complaint specifically alleged that S.D. and B.D. had detailed specific incidents in which Father physically abused them both and sexually abused S.D. They also expressed fear that Father would seriously harm them if he knew that they had spoken to the caseworker.

{¶5} Both parents later waived their rights to an adjudicatory hearing and agreed that the children were abused under R.C. 2151.031(C) and (D) as alleged in the complaint. The parents also agreed that the trial court would place the children in the temporary custody of CSB and adopt the case plan as a court order. Father was ordered to have no contact with the children and was later charged with domestic violence and child endangering. Those criminal charges remained pending throughout this case.

{¶6} Because both children had been exposed to trauma while living with Father, they engaged in trauma counseling pursuant to the case plan. B.D. resided in foster care, but S.D. was later placed in a residential treatment facility because he was threatening to harm himself and was

unable to control his emotions and aggressive behavior. The children made progress during counseling but continued to express that they had no desire to return to Father's custody or to even speak to him. Because the children were not emotionally prepared to see Father and a court order prohibited their contact, the children had no contact with Father during this case.

{¶7} The trial court adopted the case plan on April 30, 2024. In addition to demonstrating that he had stable and suitable housing and income to meet the basic needs of the children, the case plan required Father to obtain mental health and sex offender assessments and engage in any recommended treatment. Father delayed engaging in case plan services. He did not begin his three-session mental health assessment until July and did not complete it until the end of October because he repeatedly cancelled and delayed rescheduling his second and third sessions. The psychologist who performed the assessment noted that Father was so guarded and defensive during the assessment that she was unable to definitively diagnose him.

{¶8} She also expressed concern that Father denied that he had ever physically or sexually abused his children. In her professional opinion, the children's descriptions of the abuse were so "detailed" and "unique" that she did not believe they had fabricated their allegations. Nevertheless, because Father refused to admit that he abused the children, the psychologist recommended that Father engage in veracity testing to gauge whether he had been honest during his interview with her. Another expert would later explain that veracity testing would monitor the stress level in Father's voice to determine whether he was being truthful with the evaluator.

{¶9} Father did not begin his sex offender assessment until January 2025, more than eight months after the trial court ordered him to engage in case plan services. CSB had been unable to make a referral for the assessment for several months because Father had refused to sign an information release. Father then cancelled nine of his scheduled appointments for the multi-

session sex offender assessment, so he did not complete the assessment until April 2025. Throughout that assessment, Father again denied that he had ever physically or sexually abused S.D. or B.D. For that reason, and because the psychologist performing the assessment questioned the credibility of some of the children's allegations, he also recommended that Father obtain a veracity test.

{¶10} On April 17, 2025, CSB moved for permanent custody of B.D. and S.D. In a concise, two-page argument, CSB alleged only one basis for permanent custody: that the children had been in its temporary custody for at least 12 months of a consecutive 22-month period and that permanent custody was in their best interest. *See* R.C. 2151.414(B)(1)(d). As explained in its motion, CSB's "12 of 22" calculation included time that the children had spent in CSB's emergency temporary custody in the prior case that was dismissed, as well as pre-adjudication time from the current case. In other words, the agency's "12 of 22" allegations explicitly focused on the December 15, 2023, removal of the children from the home and the fact that they had remained in CSB custody since that date.

{¶11} Despite having ample notice that CSB based its "12 of 22" ground on time that the children were in agency custody in the prior case, Father did not move to dismiss the motion or otherwise raise any opposition to the alleged "12 of 22" ground during the three months before the final hearing. Instead, Father alternatively sought a six-month extension of temporary custody so he would have more time to work on the case plan.

{¶12} The day before the hearing was scheduled to commence, Father filed a motion for a continuance of the hearing, asserting that he had not had time to complete the veracity testing recommended by the experts who performed his mental health and sex offender assessments. He did not request a specific length of time for the continuance and did not propose alternative dates

for the hearing. He also did not indicate whether he had communicated with counsel for the other parties about his request for a continuance.

{¶13} At the final hearing, after all other parties voiced their opposition to continuing the hearing, the trial court denied Father's request for a continuance. At the hearing, Father focused his defense to the permanent custody motion on the best interest of the children. Specifically, he disputed whether permanent custody was in the best interest of his children because he had not been given enough time to work on the reunification requirements of the case plan.

{¶14} After the final hearing, the trial court granted CSB's motion for permanent custody and denied Father's alternative request for an extension of temporary custody. The court terminated parental rights and placed B.D. and S.D. in the permanent custody of CSB. Father appeals and raises four assignments of error.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED IN DENYING A REASONABLE REQUEST FOR CONTINUANCE.

{¶15} Father's first assignment of error is that the trial court erred in denying his motion for a continuance that he filed with the juvenile court one day before the final hearing was set to commence. Juv.R. 23 provides that "[c]ontinuances shall be granted only when imperative to secure fair treatment for the parties." The decision to grant or deny a continuance lies within the sound discretion of the trial judge, which requires a balancing of "any potential prejudice to a [party against] concerns such as a court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice." *State v. Unger*, 67 Ohio St.2d 65, 67 (1981).

{¶16} Local Rule 5.05(A) of the Wayne County Juvenile Court further provide, that "[n]o continuances of any hearing" will be considered unless, among other things, the party seeking a

continuance indicates that he has communicated with other parties and states their position on the continuance, that the party explain his need for a continuance and when that need arose, and that he include a proposed entry with a new hearing date that he cleared with the other parties. Father failed to comply with any of those requirements.

{¶17} At the hearing the next day, all other parties opposed Father's request for a continuance because they were prepared to proceed with the final hearing. The guardian ad litem and the children's attorneys further emphasized that the children had been in a state of limbo for too long, their mental health was suffering from the uncertainty about their futures, and they needed legally secure permanent placements as soon as possible.

{¶18} Furthermore, the sole reason that Father sought an extension of the final hearing was to complete the veracity testing that was recommended by the psychologists who conducted his mental health and sex offender assessments. To begin with, Father delayed obtaining his mental health and sex offender assessments for several months. Even with those delays, Father was informed in early January 2025 and again on June 4, 2025, that the psychologists recommended that Father engage in veracity testing. Nevertheless, Father waited until July 2025 to attempt to schedule that testing. He offered no reasonable explanation for why he had waited so long to schedule an appointment.

{¶19} Finally, Father's purported need for the results of the veracity testing was to prove that he was telling the truth about not physically or sexually abusing his children. Father's argument presumes that veracity testing would support his statements that he did not abuse the children. More significantly, Father's argument ignores the significant procedural fact in this case that Father's abuse of the children had already been proven. Although Father was still facing unresolved criminal charges pertaining to his children, the time for Father to challenge the

allegations of abuse in these juvenile cases was at the adjudicatory stage of the proceedings. Rather than challenging CSB's allegations at that time, Father waived his right to a contested adjudicatory hearing and agreed that he abused the children, as alleged in the complaint.

{¶20} Had Father not waived his right to a hearing, CSB would have been required to prove the allegations in the complaints by clear and convincing evidence. *In re K.J.*, 2019-Ohio-123, ¶ 13 (9th Dist.), citing *In re T.C.*, 2018-Ohio-4369, ¶ 15 (9th Dist.), citing Juv.R. 29(F) and R.C. 2151.35(A)(1). After the magistrate adjudicated the children abused based on the parties' agreement, the trial court adopted the magistrate's adjudicatory and dispositional decisions. Father failed to challenge the adjudication and initial disposition of the children through timely objections and/or an appeal to this Court. *In re A.S.*, 2025-Ohio-2621, ¶ 10 (9th Dist.). This case proceeded to the final hearing "based on the unchallenged and conclusive adjudications" that Father had abused each child. *Id*., citing *In re H.F.*, 2008-Ohio-6810, ¶ 18. Consequently, Father suffered no prejudice from the trial court's denial of his continuance. The results of Father's veracity testing, even if favorable to him, would not help his defense against the permanent custody motion because it was already established in the children's juvenile cases that Father abused them.

{¶21} For all the reasons set forth above, Father has failed to establish that the juvenile court abused its discretion by denying his request for a continuance of the final hearing. His first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN CONCLUDING [THAT] THE CHILDREN RESIDED IN THE TEMPORARY CUSTODY OF A CHILDREN SERVICES AGENCY FOR TWELVE OF THE PRECEDING TWENTY-TWO MONTHS.

{¶22} Father's second assignment of error challenges the trial court's finding on the first prong of the permanent custody test. Before a juvenile court may terminate parental rights and

award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child of the same parent has been adjudicated abused, neglected, or dependent three times; or that the child cannot be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D)(1). R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 98-99 (1996).

{¶23} On the first prong of the permanent custody test, the trial court found that both children had been in the temporary custody of CSB for at least 12 months of a consecutive 22-month period under R.C. 2151.414(B)(1)(d). In relevant part, R.C. 2151.414(B)(1) provides that, for purposes of the "12 of 22" provision:

> a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated . . . or the date that is sixty days after the removal of the child from home."

{¶24} The trial court found that the children were initially removed from the home in the prior case on December 15, 2023, and remained in CSB's custody ever since. According to the trial court, the children entered CSB's "temporary custody" for purposes on this provision on February 13, 2024, which was 60 days "after the removal of the child[ren] from home[]" in the prior case. Because the children remained outside Father's home and in CSB's custody until CSB moved for permanent custody on April 17, 2025, the trial court concluded that the children remained in CSB's "temporary custody" from February 13, 2024, to April 17, 2025, or a total of 429 days, which was more than 14 months. Consequently, the trial court found that the "12 of 22" ground was satisfied.

{¶25} Father now argues for the first time on appeal that the trial court should have begun its "12 of 22" calculation with the earlier of the adjudication or removal of the children from home in the current case. He asserts that the court erroneously interpreted R.C. 2151.414(B)(1) to look back to the "removal of the child[ren] from home[]" in prior cases that were dismissed without the trial court ever adjudicating the children or ordering reunification services. Father raises a novel legal issue on appeal, but he failed to even question the "12 of 22" calculation in the trial court, despite having numerous opportunities to do so. Given the unique circumstances of this case, in which Father implicitly acquiesced in the "12 of 22" calculation, this Court must conclude that he failed to preserve this challenge for appellate review.

{¶26} Through its motion for permanent custody, filed three months before the hearing commenced, CSB based its motion solely on the "12 of 22" ground and explained that its time calculation was based on the date that the children were removed from Father's home in the prior cases. Father filed no motion to dismiss the permanent custody motion prior to the hearing. Moreover, he never asserted during the hearing that the time the children spent in CSB's "temporary custody" for purposes of R.C. 2151.414(B)(1)(d) did not begin to run 60 days after they were removed from the home during December 2023.

{¶27} The hearing proceeded as if all parties had agreed to that calculation. When CSB asked the trial court to take judicial notice of the records from the prior case, all parties agreed that it could do so. It was apparent from the context of that discussion that the records were referenced for the sole purpose of establishing a timeline for purposes of the "12 of 22" provision. Throughout the hearing, CSB repeatedly noted that the "12 of 22" ground had been satisfied because the children had remained in the agency's custody since December 2023. Father's counsel never disputed or questioned the "12 of 22" ground through any objection, witness cross-examination,

or closing argument. Instead, Father's defense at the hearing focused only on the best interest prong of the permanent custody test.

{¶28} This Court's rejection of Father's assignment of error should not be construed as an implicit acceptance of the trial court's interpretation of R.C. 2151.414(B)(1)(d) to include time from prior cases in which the juvenile court placed the children in an agency's emergency temporary custody but did not adjudicate them as abused, neglected, or dependent. This Court overrules Father's second assignment of error without reaching its legal merits because Father failed to preserve the argument for appellate review.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT COMMITTED PLAIN ERROR THROUGH REPEATEDLY ADMITTING STATEMENTS MADE BY THE CHILDREN AS EVIDENCE.

{¶29} Father's third assignment of error is that the trial court erred in admitting certain statements made by the children because those statements constituted inadmissible hearsay. He recognizes that he failed to object to this evidence when it was admitted during the hearing but argues that the trial court committed plain error by admitting and considering the children's statements. Father points to statements that the children made to the caseworker and mental health professionals about Father's physical and sexual abuse of them.

{¶30} Most of the children's statements qualified as hearsay exceptions under Evid.R. 803(4) as statements made for purposes of their mental health diagnoses and treatment, and Father does not argue otherwise. *See In re I.R.*, 2023-Ohio-3044, ¶ 18 (9th Dist.). Moreover, Father fails to establish that he was prejudiced by these statements insofar as they supported allegations that he had abused the children. As emphasized already, Father's abuse of the children was conclusively established by the trial court's abuse adjudication. *In re A.S.*, 2025-Ohio-2621, at ¶

10 (9th Dist.). Father agreed that the children were abused, based on the facts alleged in the complaint, which included some of the statements made by the children. Because Father has failed to demonstrate any prejudicial error in the trial court's consideration of the children's statements about him abusing them, his third assignment of error is overruled.

**ASSIGNMENT OF ERROR IV**

> THE TRIAL COURT'S FINDING THAT PERMANENT CUSTODY WAS IN THE CHILDREN'S BEST INTEREST INSTEAD OF AN EXTENSION OF TEMPORARY CUSTODY WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶31} Father's final assignment of error is that the trial court's best interest determination was against the manifest weight of the evidence. In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.) *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

{¶32} When reviewing the trial court's best interest determination, this Court focuses on the specific factors set forth in R.C. 2151.414(D). *In re M.S.*, 2023-Ohio-1558, ¶ 25 (9th Dist.). The trial court was required to consider the statutory best interest factors, which include: the interaction and interrelationships of the children, their wishes, their custodial history, their need for permanence and whether that can be achieved without a grant of permanent custody, and whether any of the factors outlined in R.C. 2151.414(E)(7)-(11) apply. R.C. 2151.414(D)(1)(a)-

(e); *see also In re R.G.*, 2009-Ohio-6284, ¶ 11 (9th Dist.). None of the factors set forth in R.C. 2151.414(E) (7)-(11) apply in this case.

{¶33} Father does not argue about the trial court's consideration of the statutory best interest factors. Instead, he asserts that the children's best interest would have been better served by granting him an extension of temporary custody because he had made substantial progress on the reunification goals of the case plan. This Court has repeatedly emphasized that case plan progress is not dispositive of the children's best interest. *See*, *e.g.*, *In re A.M.*, 2025-Ohio-5029, ¶ 22 (9th Dist.); *In re T.R.*, 2024-Ohio-3092, ¶ 24 (9th Dist.); *In re J.W.*, 2019-Ohio-210, ¶ 15 (9th Dist.).

{¶34} Moreover, the record does not support Father's claim that he had made progress working toward reunification with the children. Father delayed getting his mental health and sex offender assessments, did not consistently engage in counseling, cancelled many of his scheduled appointments with the caseworker and outside service providers, and continued to deny that he ever harmed his children despite agreeing that he had abused them at the adjudicatory hearing. Father was also facing criminal charges for domestic violence and child endangering and was evicted from his home shortly before the final hearing.

{¶35} The statutory best interest factors overwhelmingly supported the trial court's conclusion that permanent custody was in the children's best interest. The children had no contact with Father during this case because of a court order. Furthermore, the evidence was undisputed that the children feared Father and had no desire to live with or even speak to him. Father asserts in his brief that the trial court "denied a request" for an in camera interview of S.D., but he misrepresents what happened at the end of the hearing. After a discussion about the evidence that S.D. had consistently expressed his desire not to reunify with Father, the child's attorney agreed

with the trial judge that there was no need for S.D to clarify his wishes or to be put through the additional stress of an in camera interview.

{¶36} The children's counselors opined that they would need ongoing counseling for an extended period before they would be prepared to work through their trauma or have any contact with Father. The children needed a legally secure permanent placement, and CSB had found no suitable relatives who were willing or able to take custody of them. The children, then ages 15 and 13, wanted to sever their ties with Father so they could move on with their lives.

{¶37} Given the evidence presented at the final hearing, the trial court did not lose its way in concluding that permanent custody was in the children's best interest. *See Eastley* at ¶ 20. Father's fourth assignment of error is overruled.

### III.

{¶38} Father's assignments of error are overruled. The judgment of the Wayne County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to

mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

 

BETTY SUTTON
FOR THE COURT

CARR, P. J.
CONCURS.

FLAGG LANZINGER, J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

JOSHUA A. NEWTON, Attorney at Law, for Appellant.

ANGELA WYPASEK, Prosecuting Attorney, and ALEXANDER MONTVILAS, Assistant Prosecuting Attorney, for Appellee.

YU MI KIM-REYNOLDS, Attorney at Law, for Appellee.

RODNEY A. BACA, Attorney at Law, for Appellee.

WHITNEY K. MILLER, Attorney at Law, for Appellee.

MARY G. WARLOP, Guardian ad Litem.